CURRITUCK, The (McCOY v.). See Case No. 8,730.

CURRO, The FRANCESCA. See Case No. 5,029.

CURRY (HENRY v.). See Case No. 6,381.

---

## Case No. 3,494.

CURRY et al. v. The H. J. MAY.[1]

District Court, S. D. Florida.[2]

### SALVAGE—COMPENSATION.

[1. Where salvors have used their best efforts and appliances, the fact that their labor is increased by reason of inability to come alongside of the wreck because of the size of their vessels, is no reason for refusing compensation for such increased labor.]

[2. The failure of salvors to save property liable to rapid deterioration, rather than that not exposed to immediate destruction, is severely censurable, especially where a greater amount of property could have been saved without incurring extra risk; yet, if the failure to save more property was not caused by willful neglect, but was at most an error of judgment, compensation should not be withheld, but should be reduced proportionately.]

[3. Where, after a salvage service has been abandoned, sugar was saved from the vessel's lower hold with great labor, necessitating the handling of 20 hogsheads to get one of sugar, 55 per cent. of the net proceeds is reasonable compensation.]

[In admiralty. Libels by John Curry and others, by Thomas Blake and others, and by Richard Warfield against the schooner H. J. May for salvage services.]

These cases having been joined, will be considered as one; as well as all petitions herein. The circumstances are nearly similar to those of the William M. Jones, in

[1] [Published by permission from the MSS. of Hon. James W. Locke, District Judge.]
[2] [Date not given.]

which an opinion has just been rendered. [Case unreported.] It was satisfactorily shown that the vessel had bilged at the time the libellants boarded her; and they proceeded at once to the saving of cargo. The service was promptly and skillfully rendered, and the labor much increased on account of the necessity of being compelled to transfer the property saved from their smaller vessels to their larger ones. The respondent claims that this increase of labor was caused by the libellants of larger vessels being unable to come alongside of the wreck, and should not, therefore, enhance the salvage. When salvors use all of the means within their power to save property, it is but just to consider the actual amount of labor performed, and they are in no wise to blame for not being possessed of appliances, or vessels, which would have diminished the amount of labor actually required to perform the service. It is further contended that the salvors, unmindful of their duty, before they had saved all the cargo that might have been saved from the lower hold, where it was rapidly deteriorating, abandoned that work and proceeded to the saving of cargo between decks, and the materials; and I am not fully satisfied but what this is justly urged. Whenever it is within the power of salvors it is always their duty to save property when liable to rapid deterioration rather than that which is not exposed to immediate destruction; and, any party wilfully neglecting to save property which is in greater danger for the purpose of saving that which is not in immediate peril, will be liable to severe censure. In this case there have been several reasons urged why the saving of the cargo from the lower hold was abandoned and the work of saving rigging undertaken; but, I am not fully satisfied but what a greater amount of property might have been saved without its incurring any extra risk, by a continuation of labor in the lower hold. Yet, if so, I am satisfied that it was in no way a wilful neglect of the salvors, but, at the worst, an error of judgment. If, by that course, they have not saved as much property as otherwise they might, their salvage will be reduced in that proportion, as they will receive but a per centage of the actual amount saved; so that I do not consider the case demands any reduction of the salvage to be actually given.

Referring again to the case of the Jones; while the property saved herein was more liable to rapid deterioration, it does not appear that any of it was saved by diving, although much was taken from under water. In view of the facts and circumstances of the case, I consider that 28 per cent. of the property saved from between decks, and 45 per cent. of that saved from the lower hold, and proceeds of materials, will be a fair salvage compensation.

In the petition of Richard Warfield, master of the Grover King, who, after the salvage

service had been abandoned by the libellants, saved from the lower hold three hogsheads of sugar and five barrels of syrup (it appearing that said sugar was saved with great labor, they being compelled to handle some twenty hogsheads in order to get one of sugar) it is ordered that they have 55 per cent. of the net proceeds. And is referred to John T. Barker, Esq., as commissioner.